# ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JAN 0 2 2015

JAMES N. HATTEN, Clerk

Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ACCESS POINT FINANCIAL, INC.,  )
  )
     Plaintiff,  )
  )
v.  )   Civil Action File No.
  )
  )   1:15-cv-0002 RWS
EXT-INDY SUITES, LLC;  )
RYSZARD J. ZADOW; CLAIRE J.  )
ZADOW; JERRY DEHNER; and  )
HYDE PARK CG, LLC,  )
  )
     Defendants,  )
  )
AND RELATED ACTIONS.  )
_____/  )

## DEFENDANT EXT-INDY SUITES, LLC'S ANSWER, DEFENSES, CROSS-CLAIM AND COUNTERCLAIM

## ANSWER AND DEFENSES

Ext-Indy Suites, LLC ("Ext-Indy"), by and through undersigned counsel, files its Answer and Defenses to the Complaint filed by Plaintiff in the above-styled matter, showing this honorable Court more particularly as follows:

## FIRST DEFENSE

Plaintiff fails to state a claim against Ext-Indy upon which relief can be granted.

## SECOND DEFENSE

Ext-Indy asserts the defense of lack of personal jurisdiction.

## THIRD DEFENSE

Venue is improper in this Court.

## FOURTH DEFENSE

Ext-Indy asserts the defense of insufficiency of process.

## FIFTH DEFENSE

Ext-Indy asserts the defense of insufficiency of service of process.

## SIXTH DEFENSE

Plaintiff's claims against Ext-Indy are barred by payment.

## SEVENTH DEFENSE

Plaintiff's claims against Ext-Indy are barred by release.

## EIGHTH DEFENSE

Plaintiff's claims against Ext-Indy are barred by waiver.

## NINTH DEFENSE

Plaintiff's claims against Ext-Indy are barred by accord and satisfaction.

## TENTH DEFENSE

Plaintiff's claims against Ext-Indy are barred by estoppel.

## ELEVENTH DEFENSE

Plaintiff's claims against Ext-Indy are barred in whole or in part by total or partial failure of consideration.

## TWELFTH DEFENSE

Ext-Indy asserts the affirmative defense of duress.

## THIRTEENTH DEFENSE

Plaintiff has suffered no damages for which this defendant is liable.

## FOURTEENTH DEFENSE

Plaintiff's claims against Ext-Indy are barred, in whole or in part, by mistake.

## FIFTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by its failure to mitigate damages.

## SIXTEENTH DEFENSE

No act or omission on the part of Ext-Indy constituted willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

### SEVENTEENTH DEFENSE

Plaintiff is not entitled to recover punitive damages against Ext-Indy in any amount or in the amount sought in the Complaint under O.C.G.A. §51-12-5.1.

### EIGHTEENTH DEFENSE

Plaintiff's damages, if any, were the proximate result of its own acts or omissions or the acts or omissions of persons or parties other than Ext-Indy.

### NINETEENTH DEFENSE

Plaintiff's claims against Ext-Indy are barred, in whole or in part, by lack of mutuality of obligation.

### TWENTIETH DEFENSE

Plaintiff's claims against Ext-Indy are barred, in whole or in part, by the equitable doctrine of unclean hands.

### TWENTY-FIRST DEFENSE

Ext-Indy answers the allegations in the Complaint's numbered paragraphs as follows:

1.

Ext-Indy denies that it presently owes any amounts to Plaintiff based on the alleged loan and guaranty obligations.  Ext-Indy denies the allegations in Paragraph 1 of the Complaint that either it or Ryszard J. Zadow or Claire J. Zadow,

4

individually, misrepresented the financial capabilities of Ext-Indy, or Ryszard J. Zadow, and Claire J. Zadow (the "Zadows") to perform under their respective loan and guaranty obligations. Ext-Indy further denies the allegations in this Complaint paragraph that it or the Zadows made misrepresentations to induce Plaintiff to loan money to Ext-Indy. Ext-Indy further denies that it or the Zadows had knowledge of, or authorized or consented to, either Defendant Jerry Dehner ("Dehner") or Defendant Hyde Park CG, LLC ("HPCG") making misrepresentations to Plaintiff.

2.

After reasonable inquiry, Ext-Indy lacks knowledge or information sufficient to form a belief as to the truth of the averments in Complaint Paragraph 2. As such, Ext-Indy denies these averments and demands strict proof thereof.

3.

Ext-Indy admits that it is an Indiana limited liability company. Ext-Indy denies that proper service of this Complaint could be made through Ext-Indy's Indiana registered agent. Ext-Indy further denies that it was properly served with Summons and Complaint.

4.

Ext-Indy admits the allegations in the first sentence of Complaint Paragraph 4. The allegations in the second sentence merely recite what is set forth in a

5

written document, to which no response is required. To the extent a response is

required, Ext-Indy states that the document referred to in this paragraph speaks for

itself and, Ext-Indy denies all allegations inconsistent therewith. Ext-Indy further

denies the R. Zadow was served with Summons and Complaint in contractually

required manner that Plaintiff alleges.

5.

Ext-Indy admits the allegations in the first sentence of Complaint Paragraph

5. The allegations in the second sentence merely recite what is set forth in a

written document, to which no response is required. To the extent a response is

required, Ext-Indy states that the document referred to in this paragraph speaks for

itself and, Ext-Indy denies all allegations inconsistent therewith. Ext-Indy further

denies that C. Zadow was served with Summons and Complaint in the

contractually required manner that Plaintiff alleges.

6.

After reasonable inquiry, Ext-Indy lacks knowledge or information sufficient to form a belief as to the truth of the averments in Complaint Paragraph 6. As such, Ext-Indy denies these averments and demands strict proof thereof.

7.

After reasonable inquiry, Ext-Indy lacks knowledge or information sufficient to form a belief as to the truth of the averments in the first sentence of Complaint Paragraph 7. As such, Ext-Indy denies these averments and demands strict proof thereof. As to the allegations in the second sentence of this paragraph, Ext-Indy admits that, at all times relevant to the subject matter of this lawsuit, Ext-Indy understood that Dehner was the managing partner of HPCG.

8.

Ext-Indy admits that it was a party to a forbearance agreement with Plaintiff. Ext-Indy denies that the document is attached as Exhibit B to the Complaint is a true and correct copy of the forbearance agreement it signed with Plaintiff. Ext-Indy further denies that the forbearance agreement, or a forum selection clause contained therein, is relevant to the claims asserted by Plaintiff in this lawsuit. To the extent it is relevant, Ext-Indy states that the terms and conditions of that written

7

document speak for themselves and Ext-Indy denies all averments in Complaint

Paragraph 8 inconsistent therewith.

9.

The allegations in Complaint Paragraph 9 merely recite a statement of law to

which no response is required. To the extent a response is required, Ext-Indy

states that, after reasonable inquiry, it lacks knowledge or information sufficient to

form a belief as to the truth of the allegations in Complaint Paragraph 9. As such,

Ext-Indy denies these allegations and demands strict proof thereof.

10.

After reasonable inquiry, Ext-Indy lacks knowledge or information sufficient

to form a belief as to the truth of the averments in Complaint Paragraph 10. As

such, Ext-Indy denies these averments and demands strict proof thereof.

11.

After reasonable inquiry, Ext-Indy lacks knowledge or information sufficient

to form a belief as to the truth of the averments in Complaint Paragraph 11. As

such, Ext-Indy denies these averments and demands strict proof thereof.

12.

After reasonable inquiry, Ext-Indy lacks knowledge or information sufficient

to form a belief as to the truth of the averment in Complaint Paragraph 12

concerning when Plaintiff submitted a term sheet to Dehner.  Ext-Indy admits that it received a copy of the term sheet, a true and correct copy of which is attached as Exhibit C to the Complaint.  Ext-Indy denies all other allegations in this Complaint paragraph not expressly admitted herein.

13.

The allegations in Complaint Paragraph 13 merely restate what is in a written document, the terms and conditions of which speak for themselves, and Ext-Indy denies all allegations in this Complaint paragraph inconsistent therewith.

14.

Admitted.

15.

Ext-Indy denies the allegations in the first sentence of Complaint Paragraph 15.  Ext-Indy admits that Exhibit D to the Complaint contains a true and correct copy of the Credit Application describing the First Mortgage.

16.

Admitted.

17.

Admitted.

9

18.

Admitted.

19.

Ext-Indy denies the allegations in the first sentence of Complaint Paragraph 19. Ext-Indy admits that a true and correct copy of the Mortgage Note attached as Exhibit E to the Complaint..

20.

Ext-Indy denies the allegations in the first sentence of Complaint Paragraph 20. Ext-Indy admits the allegations in the second sentence of this Complaint paragraph. Ext-Indy further admits that a true and correct copy of the Mortgage is attached as Exhibit F to the Complaint.

21.

Ext-Indy denies the allegations in the first sentence of Complaint Paragraph 21. The allegations in the second sentence of this Complaint paragraph merely restate what is in a written document, the terms and conditions of which speak for themselves, and Ext-Indy denies all allegations in this Complaint paragraph inconsistent therewith. Ext-Indy admits that a true and correct copy of the Assignment of Rents is attached as Exhibit G to the Complaint.

10

22.

Ext-Indy denies the allegations in the first sentence of Complaint Paragraph 22 concerning when Ext-Indy executed and delivered to Plaintiff a Pledge, Security and Escrow Agreement.  The remaining allegations in the first sentence of this Complaint paragraph merely restate what is in a written document, the terms and conditions of which speak for themselves, and Ext-Indy denies all allegations in this Complaint paragraph inconsistent therewith.  Ext-Indy admits that a true and correct copy of the Pledge, Security and Escrow Agreement is attached as Exhibit H to the Complaint.

23.

Ext-Indy denies the allegations in the first sentence of Complaint Paragraph 23 concerning when the Zadows executed and delivered to Plaintiff the Guaranty. The remaining allegations in the first sentence of this Complaint paragraph merely restate what is in a written document, the terms and conditions of which speak for themselves, and Ext-Indy denies all allegations in this Complaint paragraph inconsistent therewith.  Ext-Indy admits a true and correct copy of the Guaranty is attached as Exhibit A to the Complaint.

24.

Ext-Indy denies the allegations in the first sentence of Complaint Paragraph

24 concerning when Ext-Indy executed and delivered to Plaintiff the Loan

Agreement.  The remaining allegations in the first sentence of this Complaint

paragraph merely restate what is in a written document, the terms and conditions of

which speak for themselves, and Ext-Indy denies all allegations in this Complaint

paragraph inconsistent therewith.  Ext-Indy admits a true and correct copy of the

Loan Agreement is attached as Exhibit I to the Complaint.

25.

Ext-Indy denies the allegations in the first sentence of Complaint Paragraph

25 concerning when Ext-Indy executed and delivered to Plaintiff the Cap-ex Note.

The remaining allegations in the first sentence of this Complaint paragraph merely

restate what is in a written document, the terms and conditions of which speak for

themselves, and Ext-Indy denies all allegations in this Complaint paragraph

inconsistent therewith.  Ext-Indy admits a true and correct copy of the Loan

Agreement is attached as Exhibit J to the Complaint.

26.

Ext-Indy denies the allegations in the first sentence of Complaint Paragraph

26 concerning when the Zadows executed and delivered to Plaintiff the Cap-ex

12

Guaranty. The remaining allegations in the first sentence of this Complaint

paragraph merely restate what is in a written document, the terms and conditions of

which speak for themselves, and Ext-Indy denies all allegations in this Complaint

paragraph inconsistent therewith. Ext-Indy admits a true and correct copy of the

Cap-ex Guaranty is attached as Exhibit K to the Complaint.

27.

Ext-Indy denies the allegations in the first sentence of Complaint Paragraph

26 concerning when the Zadows executed and delivered to Plaintiff the Guarantor

Pledge Agreement. The remaining allegations in the first sentence of this

Complaint paragraph merely restate what is in a written document, the terms and

conditions of which speak for themselves, and Ext-Indy denies all allegations in

this Complaint paragraph inconsistent therewith. Ext-Indy admits a true and

correct copy of the Guarantor Pledge Agreement is attached as Exhibit L to the

Complaint.

28.

Ext-Indy admits that it signed the Closing Statement attached as Exhibit M

to the Complaint, but denies that it did so on August 30, 2013. Ext-Indy did not

execute this particular Closing Statement until September 9, 2013.

13

29.

The Closing Statement speaks for itself and Ext-Indy denies all allegations in Complaint Paragraph 29 inconsistent therewith.

30.

Denied, as stated.

31.

Ext-Indy denies that the joint personal financial statement attached as Exhibit N is the same document that the Zadows submitted to Dehner and HPCG in connection with the underlying transaction that is the subject matter of this dispute.

32.

Ext-Indy denies that the joint personal financial statement attached as Exhibit N is the same document that the Zadows submitted to Plaintiff in connection with the underlying transaction that is the subject matter of this dispute. Since Plaintiff's allegations are based on a document that Ext-Indy neither submitted nor authorized to be submitted, Ext-Indy denies the allegations in Complaint Paragraph 32.

33.

Denied.

14

34.

After reasonable inquiry, Ext-Indy lacks knowledge or information sufficient

to form a belief as to the truth of the allegations in Complaint Paragraph 35

concerning what Plaintiff understood as the status of the Zadows' IRA accounts

and the stocks and bonds held by the Zadows.  By way of further response, Ext-

Indy states that, on or about August 7, 2013, Ext-Indy and the Zadows informed

Dehner that the Zadows' self-directed IRAs were already in the form of notes

receivable, as indicated in the financial information the Zadows had previously

given to Dehner and HPCG.  Before the loan documents were executed, Ext-Indy

and the Zadows told Dehner and HPCG that their personal retirement accounts and

stock and bond holdings were not accessible as equity contributions.  Ext-Indy and

the Zadows were relying on Dehner and HPCG to convey this information to

Plaintiff. To the extent not expressly admitted herein, Ext-Indy denies the

remaining averments in this Complaint paragraph and demands strict proof thereof.

35.

After reasonable inquiry, Ext-Indy lacks knowledge or information sufficient

to form a belief as to the truth of the allegations in Complaint Paragraph 35.  As

such, Ext-Indy denies these allegations and demands strict proof thereof.  By way

of further response, Ext-Indy denies that it or the Zadows they authorized or

15

consented to Dehner or HPCG approving a Closing Statement indicating that Ext-Indy or the Zadows would be required to make an equity contribution in any amount, and further denies that Ext-Indy or the Zadows authorized or consented to Dehner or HPCG approving or submitting to Plaintiff a personal financial statement in the form attached as Exhibit N to the Complaint.

36.

After reasonable inquiry, Ext-Indy lacks knowledge or information sufficient to form a belief as to the truth of the averments in Complaint Paragraph 36 concerning what information Plaintiff did or did not rely on in deciding whether to loan money to Ext-Indy.  By way of further response, Ext-Indy denies that the personal financial information attached as Exhibit N to the Complaint, and upon which Plaintiff allegedly relied, is the same document that the Zadows submitted to Dehner and HPCG in connection with the underlying transaction that is the subject matter of this dispute.

37.

After reasonable inquiry, Ext-Indy lacks knowledge or information sufficient to form a belief as to the truth of the averments in Complaint Paragraph 37 concerning what information Plaintiff did or did not rely on in deciding whether to loan money to Ext-Indy.  By way of further response, Ext-Indy denies that either it

16

or the Zadows made statements to Plaintiff that Ext-Indy or the Zadows had the

financial ability to fund the equity contribution.  To the extent that Dehner or

HPCG made such a statement (or statements), such conduct was without the

permission or consent of Ext-Indy and the Zadows and such statements, in fact,

were contrary to information and instructions that Ext-Indy and the Zadows had

furnished Dehner and HPCG to provide to Plaintiff.  To the extent not expressly

admitted herein, Ext-Indy denies all other averments in this Complaint paragraph

and demands strict proof thereof.

38.

After reasonable inquiry, Ext-Indy lacks knowledge or information sufficient

to form a belief as to the truth of the allegations in Complaint Paragraph 38.  As

such, Ext-Indy denies these averments and demands strict proof thereof.

39.

Ext-Indy admits that Defendants Dehner and Hyde-Park knew that Ext-Indy

and the Guarantors did not have the financial ability to make the required equity

contribution.  Ext-Indy, however, denies that it or the Zadows told Dehner or

HPCG that Ext-Indy or the Zadows did not have the financial capability to repay

the loans.  By way of further response, Ext-Indy denies that it represented to

Plaintiff that Ext-Indy or the Guarantors had the financial capability to make the

17

equity contribution, and Ext-Indy further denies that it authorized Dehner or HPCG

to make such representation to Plaintiff.  To the extent that Dehner or HPCG made

such representations to Plaintiff, they did so without the permission or consent of

Ext-Indy's or the Zadows and, in fact, did so contrary to information and

instructions that Ext-Indy and the Zadows had furnished for purposes of providing

to Plaintiff.  Ext-Indy states that, upon information and belief, Dehner and HPCG

made the alleged misrepresentations to Plaintiff in order to induce Plaintiff to pay

these Defendants their agreed upon commission, but that these misrepresentations

were made without the knowledge, consent, or approval of Ext-Indy's or the

Zadows.

40.

Ext-Indy denies the allegations in Complaint Paragraph 40 that Ext-Indy

gave assurances to Plaintiff that Ext-Indy could make the equity contribution; to

the contrary Ext-Indy and the Zadows repeatedly told Dehner that Ext-Indy could

not put up any equity as part of these loan transactions.  As such, Ext-Indy admits

that it did not make the equity contribution required under the Loan Agreement

(the "Equipment Loan".  To the extent not expressly admitted herein, Ext-Indy

denies all other averments in this Complaint paragraph and demands strict proof

thereof.

18

41.

After reasonable inquiry, Ext-Indy lacks knowledge or information sufficient

to form a belief as to the truth of the allegations in Complaint Paragraph 41

concerning when Dehner and HPCG submitted a Hotel renovation budget to

Plaintiff. By way of further response, Ext-Indy denies that it or the Zadows

furnished Plaintiff with such a budget on September 5, 2013. To the extent not

expressly admitted herein, Ext-Indy denies all other averments in this complaint

paragraph and demands strict proof thereof.

42.

Ext-Indy denies that it or the Guarantors misrepresented to Plaintiff the hotel

renovation budget. Ext-Indy further states that, to the extent that Defendants

Dehner and or HPCG made such misrepresentations to Plaintiff, they did so

without Ext-Indy's or the Guarantors' knowledge, approval, or consent. To the

extent not expressly admitted herein, Ext-Indy denies all other averments in this

complaint paragraph and demands strict proof thereof.

43.

Ext-Indy admits that Plaintiff sent Ext-Indy a letter dated October 12, 2013

claiming that Ext-Indy was in default, and that a true and correct copy of this letter

is attached as Exhibit O to the Complaint.

19

44.

Ext-Indy admits that Plaintiff sent Ext-Indy a letter dated November 15, 2013 claiming that Ext-Indy was in default, and that a true and correct copy of this letter is attached as Exhibit P to the Complaint. The letter speaks for itself and Ext-Indy denies all allegations inconsistent therewith.

45.

The allegations in Complaint Paragraph 45 merely restate what is in a written document, the terms and conditions of which speak for themselves, and Ext-Indy denies all allegations in this Complaint paragraph inconsistent therewith.

46.

The allegations in Complaint Paragraph 46 merely restate what is in a written document, the terms and conditions of which speak for themselves, and Ext-Indy denies all allegations in this Complaint paragraph inconsistent therewith.

47.

Denied.

48.

Denied.

49.

After reasonable inquiry, Ext-Indy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Complaint Paragraph 49 concerning when Plaintiff agreed to enter into a Forbearance Agreement. Regardless of when Plaintiff may have consciously decided to enter into such an agreement, Plaintiff did not in fact do so until, at the earliest, December 19, 2013. As such, Ext-Indy denies the allegations in this complaint paragraph and demands strict proof thereof.

50.

The allegations in Complaint Paragraph 50 merely restate what is in a written document, the terms and conditions of which speak for themselves, and Ext-Indy denies all allegations in this Complaint paragraph inconsistent therewith.

51.

The allegations in Complaint Paragraph 51 merely restate what is in a written document, the terms and conditions of which speak for themselves, and Ext-Indy denies all allegations in this Complaint paragraph inconsistent therewith.

52.

After reasonable inquiry, Ext-Indy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Complaint Paragraph 52.  As

such, Ext-Indy denies the allegations in this Complaint paragraph and demands strict proof thereof.

53.

The allegations in Complaint Paragraph 53 merely restate what is in a written document, the terms and conditions of which speak for themselves, and Ext-Indy denies all allegations in this Complaint paragraph inconsistent therewith.

54.

Admitted.

55.

Denied.

56.

Denied.

57.

Ext-Indy denies the allegations in the first sentence of Complaint Paragraph 57. The allegations in the second sentence of this Complaint paragraph merely restate restate what is in a written document, the terms and conditions of which speak for themselves, and Ext-Indy denies all allegations in this Complaint paragraph inconsistent therewith.

58.

Admitted.

59.

The allegations in Complaint Paragraph 59 merely restate what is in a written document, the terms and conditions of which speak for themselves, and Ext-Indy denies all allegations in this Complaint paragraph inconsistent therewith.

60.

After reasonable inquiry, Ext-Indy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Complaint Paragraph 60 regarding Plaintiff's concerns about repeated extensions of Ext-Indy's proposed sale of the Property to a third-party.  By way of further response, Ext-Indy states that the remaining allegations in Complaint Paragraph 60 merely restate what is in a written document, the terms and conditions of which speak for themselves, and Ext-Indy denies all allegations in this Complaint paragraph inconsistent therewith.

61.

Ext-Indy admits that Plaintiff terminated the Forbearance Agreement.  Ext-Indy denies all other allegations in Complaint Paragraph 61.

62.

Ext-Indy admits that Plaintiff sent Ext-Indy a letter dated October 9, 2014

claiming that Ext-Indy was in default, and that a true and correct copy of this letter

is attached as Exhibit Q to the Complaint.  Ext-Indy denies that is was then, or is

now, in default under the Loan Documents.

63.

Ext-Indy admits that Plaintiff notified Ext-Indy and the Zadows of Plaintiff's

alleged right to recover attorney fees.  Ext-Indy denies that Plaintiff is entitled to

recover any additional attorney fees from Ext-Indy.

64.

Denied.

## COUNT ONE – BREACH OF CONTRACT

### (Against Ext-Indy, C. Zadow, and R. Zadow)

65.

Ext-Indy re-alleges, adopts, and incorporates herein its response to

Paragraphs 1 through 64 above as if fully set forth herein.

66.

Denied, as stated.

24

67.

Denied.

68.

Denied.

## COUNT TWO – FRAUD

### (Against All Defendants)

69.

Ext-Indy re-alleges, adopts, and incorporates herein its response to

Paragraphs 1 through 68 above as if fully set forth herein.

70.

Ext-Indy denies that it or the Zadows misrepresented the financial condition

of Ext-Indy.  Ext-Indy further denies that it or the Zadows authorized Dehner or

HPCG to misrepresent the financial condition of Ext-Indy, the Zadows, or both, to

Plaintiff.  Ext-Indy further denies the allegations in Complaint Paragraph 70 that it

or the Zadows did not have the financial ability to repay the loans; in fact, the loans

were repaid.  By way of further response, Ext-Indy states that Ext-Indy never took

draws on the Equipment Loan, and Plaintiff ultimately cancelled this loan, and

Ext-Indy made its payments under the property Mortgage Note.  Ext-Indy further

denies Plaintiff's allegations that Ext-Indy was required to make the equity

contribution under the Equipment Loan.  Since Ext-Indy never made a draw on this

loan, the equity contribution requirement never was triggered.

71.

Ext-Indy denies that the personal financial statement on which Plaintiff

bases its allegations in Complaint Paragraph 71 is the personal financial statement

that Ext-Indy or the Zadows submitted to Plaintiff, or that Ext-Indy or the Zadows

authorized Dehner or HPCG to submit to Plaintiff.  As to funds that Ext-Indy and

the Zadows had "at their disposal", Ext-Indy denies that it or the Zadows

misrepresented to Plaintiff available funds.

72.

After reasonable inquiry, Ext-Indy lacks knowledge or information sufficient

to form a belief as to the truth of the allegations in Complaint Paragraph 72

concerning what Plaintiff understood as the status of the Zadows' IRA accounts

and the stocks and bonds held by the Zadows.  By way of further response, Ext-

Indy states that, on or about August 7, 2013, Ext-Indy and the Zadows informed

Dehner that the Zadows' self-directed IRAs were already in the form of notes

receivable, as indicated in the financial information the Zadows had previously

given to Dehner and HPCG.  Before the loan documents were executed, Ext-Indy

and the Zadows told Dehner and HPCG that their personal retirement accounts and

26

stock and bond holdings were not accessible as equity contributions. Ext-Indy and

the Zadows were relying on Dehner and HPCG to convey this information to

Plaintiff. To the extent not expressly admitted herein, Ext-Indy denies the

remaining averments in this Complaint paragraph and demands strict proof thereof.

73.

After reasonable inquiry, Ext-Indy lacks knowledge or information sufficient

to form a belief as to the truth of the allegations in Complaint Paragraph 73. As

such, Ext-Indy denies these allegations and demands strict proof thereof.

74.

Denied.

75.

Denied, as stated.

76.

Ext-Indy admits that Dehner submitted a budget to Plaintiff; however, Ext-

Indy denies that it reviewed or approved this budget before it was submitted.

Moreover, Ext-Indy denies that Ext-Indy or the Zadows told Plaintiff or Dehner or

HPCG that Ext-Indy could contribute the equity contribution as part of the

Equipment Loan.

77.

Ext-Indy denies that it knew or reasonably could have known that the renovation of the Hotel would cost far more than $2,000,999.30.

78.

Ext-Indy denies the allegations in Complaint Paragraph 78 that Ext-Indy or the Zadows made any misrepresentations to Plaintiff about Ext-Indy's or the Zadows' ability to meet their respective financial obligations under the Loan Documents.  Ext-Indy further denies that it authorized or consented to either Dehner or HPCG misrepresenting to Plaintiff the financial condition of Ext-Indy or the Zadows.  Ext-Indy further denies that its obligation to fund the equity contribution ever materialized since Ext-Indy never drew money from the Equipment Loan.

79.

Denied.

80.

After reasonable inquiry, Ext-Indy lacks knowledge or information sufficient to form a belief as to the truth of the averments in Complaint Paragraph 80.  As such, Ext-Indy denies these averments and demands strict proof thereof.

81.

Denied.

82.

Denied.

83.

Ext-Indy denies that Plaintiff is entitled to recover punitive damages, in the

amount alleged or in any other amount, from Ext-Indy or the Zadows.

## COUNT THREE – NEGLIGENT MISREPRESENTATION

### (Against All Defendants)

84.

Ext-Indy re-alleges, adopts, and incorporates herein its response to

Paragraphs 1 through 83 above as if fully set forth herein.

85.

Denied.

86.

Ext-Indy denies that either it or the Guarantors made misrepresentations to

Plaintiff, at any time, regarding Ext-Indy's ability to repay the loans, to make the

equity contribution, or related to the amount of funds necessary to renovate the

Hotel.  Ext-Indy further denies that it authorized or consented to either Dehner or

HPCG misrepresenting to Plaintiff the financial condition of Ext-Indy or the Zadows.

87.

Ext-Indy denies the allegations in Complaint Paragraph 87 the information contained in the Personal Financial Statement they submitted to Dehner and HPCG showed that they or Ext-Indy had at their disposal amounts in their IRAs and stocks in the amounts alleged.  To the extent that Dehner and/or HPCG provided erroneous information to Plaintiff upon which Plaintiff relied, this was done with the knowledge, approval or consent of the Zadows or Ext-Indy.

88.

After reasonable inquiry, Ext-Indy lacks knowledge or information sufficient to form a belief as to the truth of the averments in Complaint Paragraph 88 concerning when Plaintiff learned that the assets from the Zadows' IRA and stocks and bonds were encumbered as collateral for a separate debt.  Ext-Indy denies that it or the Zadows misrepresented to Plaintiff the condition of these assets.  Ext-Indy further denies that it or the Zadows authorized or consented to either Dehner or HPCG misrepresenting to Plaintiff the condition of these assets.

30

89.

Ext-Indy denies that it or the Zadows represented to Plaintiff that Ext-Indy

or the Zadows had the ability to make the equity contribution.  Ext-Indy further

denies that it authorized or consented to either Dehner or HPCG misrepresenting to

Plaintiff that Ext-Indy or the Zadows had the ability to make the equity

contribution.  Ext-Indy further denies that the Closing Statement indicated that

Ext-Indy or the Guarantors had such sufficient funds.  Ext-Indy further denies that

the Personal Financial Statement allegedly relied on by Plaintiff is a statement that

Ext-Indy or the Zadows submitted in connection with the subject loans or

authorized Dehner or HPCG to submit on its or their behalf.

90.

Ext-Indy denies the allegations in Complaint Paragraph 90 as to Ext-Indy

and the Zadows.

91.

Ext-Indy denies that Plaintiff relied on any statements made by Ext-Indy or

the Zadows to Plaintiff since Ext-Indy or the Guarantors had no direct

communication with the Plaintiff prior to or at the time of closing of these loans.

Ext-Indy further denies that it authorized or consented to either Dehner or HPCG

making false statements to Plaintiff.  By way of further response, Ext-Indy states

that the Personal Financial Statement upon which Plaintiff bases its allegations is not the same document that Ext-Indy or the Zadows filled out or authorized Dehner or HPCG to submit to Plaintiff.

92.

Ext-Indy denies the allegations in Complaint Paragraph 92 as to Ext-Indy and the Zadows.

93.

Ext-Indy denies the allegations in Complaint Paragraph 93 as to Ext-Indy and the Zadows.

## COUNT FOUR – ATTORNEY'S FEES AND COSTS

### (Against Ext-Indy, C. Zadow, and R. Zadow)

94.

Ext-Indy re-alleges, adopts, and incorporates herein its response to Paragraphs 1 through 93 above as if fully set forth herein.

95.

The allegations in Complaint Paragraph 95 merely restate what is in a written document, the terms and conditions of which speak for themselves, and Ext-Indy denies all allegations in this Complaint paragraph inconsistent therewith.

96.

The allegations in Complaint Paragraph 96 merely restate what is in a written document, the terms and conditions of which speak for themselves, and Ext-Indy denies all allegations in this Complaint paragraph inconsistent therewith.

97.

The allegations in Complaint Paragraph 97 merely restate what is in a written document, the terms and conditions of which speak for themselves, and Ext-Indy denies all allegations in this Complaint paragraph inconsistent therewith. By way of further response, Ext-Indy states that it has repeatedly requested of Plaintiff written proof of the attorney fees incurred by Plaintiff in connection with this matter but, to date, Plaintiff has failed and refused to provide proof of such fees.

**WHEREFORE,** having fully answered Plaintiff's Complaint, Ext-Indy demands judgment in its favor, with all costs of this action being assessed against Plaintiff, and demands a jury trial on all claims so triable.

## CROSS-CLAIM OF EXT-INDY SUITES, LLC, RYSZARD J. ZADOW, AND CLAIRE J. ZADOW AGAINST DEFENDANTS JERRY DEHNER AND HYDE PARK CG, LLC

Subject to and without waiving the affirmative defenses of lack of personal jurisdiction and improper venue, Ext-Indy Suites, LLC ("Ext-Indy"), Ryszard J.

Zadow, and Claire J. Zadow (collective the Ext-Indy Cross-claimants"), named defendants in the above-styled action, file this Cross-claim against Defendants Jerry Dehner ("Dehner") and Hyde Park CG, LLC ("HPCG") pursuant to FED. R. CIV. P. 13 (the "Cross-claim"), stating as follows:

## PROCEDURAL POSTURE

### 1.

By virtue of filing a Cross-Claim against Ext-Indy, Dehner and HPCG have submitted themselves to the Court's jurisdiction.

## FACTS COMMON TO ALL COUNTS

### Background

### 2.

Around September 16, 2001, Ext-Indy purchased the Extend-a-Suites Hotel located at 7701 E. 42nd Street, Indianapolis, Indiana (the "Property").

### 3.

Ext-Indy financed its initial purchase of the Property with a loan from Private Capital Group ("First Mortgage").

4.

The First Mortgage maturity date was around September 16, 2013, and Ext-Indy would owe Private Capital Group approximately $2,000,000.00 by the maturity date.

### Ext-Indy Hired HPCG and Dehner

5.

Around June 2013, Ext-Indy began to investigate options to refinance the First Mortgage and increase the profitability of the Property.

6.

Ext-Indy began discussions with Dehner, the Managing Partner of HPCG, in regard to his ability to assist and represent Ext-Indy in obtaining refinancing for the Property and increasing its profitability.

7.

Dehner and HPCG purport to specialize in providing commercial real estate and business finance advisory services, with a particular focus on hotels.

8.

The members of Ext-Indy, Ryszard Zadow and Claire Zadow (the "Zadows"), were impressed with the credentials and sales pitch of Dehner and

HPCG and were led to believe that HPCG would be able to lead the Property toward growth and profitability.

9.

On or around July 30, 2013, Ext-Indy entered into an agreement whereby Ext-Indy engaged HPCG to act as Ext-Indy's exclusive advisor to obtain financing and formulate a strategy for the growth and success of the Property ("Engagement Agreement").

10.

Additionally, the Zadows entered into a common law Principal/Agent relationship with HPCG, whereby HPCG would also serve as the Zadows agent in regard to the financing and strategy for the Property.

11.

At all times during the events giving rise to this dispute, Dehner was the Managing Partner with HPCG and served as the primary representative of HPCG in connection with HPCG's services to Ext-Indy.

12.

The Engagement Agreement set forth that HPCG would receive an upfront payment of an Expense Retainer, totaling $5,000, and then would receive a commission equal to 2% of the gross capitalization amount raised by HPCG.

13.

Dehner and HPCG had actual authority to negotiate for Ext-Indy and the Zadows with financing entities and with other vendors/business partners in order to refinance the First Mortgage and grow the Property's business.

14.

Ext-Indy and the Zadows set a very important parameter on Dehner's agency --- Ext-Indy and the Zadows did not have any available cash that they could contribute as part of any refinancing transaction; Ext-Indy could only refinance without putting any money down toward the refinancing.

15.

Dehner received and understood Ext-Indy's and the Zadows' instructions that they could only refinance the First Mortgage and secure additional capitalization for the Property improvements without making Ext-Indy making any equity or cash contribution at closing.

### Dehner Seeks Refinancing and Formulates a Strategy for the Property that Would Enrich Dehner and HPCG

16.

In August 2013, Dehner began investigating various options for refinancing the Property and growing its business.

37

17.

What Ext-Indy and the Zadows learned later was that Dehner, in actuality, began investigating various options for the Property that would enrich Dehner and HPCG at the expense of Ext-Indy and the Zadows.

18.

At some point in August 2013, Dehner met with Choice Hotels International ("Choice") and explored the possibility that the Property could become a Clarion Inn franchise.

19.

The Property had been operated as an independent hotel, and the possibility of becoming a Clarion Inn was attractive to Ext-Indy, as Dehner persuaded the Zadows that it would drive increased business to the Property.

20.

In order to become a Clarion Inn, however, the Property would have to undergo a substantial renovation and Ext-Indy would need to hire new management to manage the Property as the Clarion Inn.

21.

Ext-Indy was excited about the possibility of becoming a Clarion Inn, and therefore, as the agent for Ext-Indy, Dehner began soliciting contractors,

management companies, and financiers in August 2013 to participate in the conversion of the Property to a Clarion Inn.

22.

Dehner worked with General Contracting Partners ("GCP") to develop a renovation plan for the Property, which Dehner indicated to Ext-Indy would cost around $2,000,000.00.

23.

Additionally, Dehner located Marshall Hotels & Resorts, Inc. ("Marshall") to serve as the new manager of the Clarion Inn, beginning in September 2013.

24.

Furthermore, Dehner worked with Plaintiff Access Point Financial ("APF") to develop a refinancing package that would pay off the First Mortgage on the Property and would cover the cost the renovations by GCP.

25.

Dehner was therefore able to secure a Franchise Agreement with Choice under which the Property would become a Clarion Inn, Ext-Indy would pay an upfront, nonrefundable franchise fee of $25,000.00, and Ext-Indy would immediately renovate the Property.

26.

During August 2013, Dehner primarily handled all negotiations with Choice, APF, GCP, and Marshall on behalf of Ext-Indy and the Zadows as their agent, and the Zadows, as principals of Ext-Indy, did not participate in any negotiations with these entities.

27.

All the while, Ext-Indy and the Zadows continued to instruct Dehner that Ext-Indy did not have any cash that it could contribute to the refinancing.

28.

With all of the pieces in place necessary to support the conversion to a Clarion Inn, Ext-Indy contracted with GCP to perform what Ext-Indy believed were $2,000,000.00 in renovations on the Property.

29.

Additionally, Ext-Indy contracted with Marshall to begin managing the Property in September 2013.

30.

Likewise, Ext-Indy executed a Franchise Agreement with Choice and paid the $25,000.00 franchise fee to Choice.

31.

Dehner indicated to Ext-Indy that financing with APF would close on or around August 30, 2013 and funds would be immediately available to begin the renovations on the hotel.

32.

Accordingly, after executing contracts with Choice, GCP, and Marshall, and with the refinancing to be closed on August 30, 2013, and on the advice of Dehner, Ext-Indy closed down a wing of the Property on August 15, 2013 and began to demolish the interior of sixty-four (64) of the rooms in the Property.

33.

Based on the information Dehner had conveyed to Ext-Indy, Ext-Indy reasonably believed that it was going to refinance the Property through APF without putting any cash down and that the proceeds from the refinancing would pay off the First Mortgage and fully cover the costs of the renovations.

## Ext-Indy Closes on the Refinancing with APF and Intends To Move Forward with the Conversion to a Clarion Inn

34.

On August 29, 2013, Ext-Indy received a closing statement from APF indicating that Ext-Indy would have to make an equity contribution at closing, on August 30, 2013, in the approximate amount of $679,000.00.

35.

Ext-Indy was shocked and immediately contacted Dehner to inquire about the closing statement and to reiterate that it could not make any equity contribution at closing.

36.

The Zadows had provided a personal financial statement ("PFS") to Dehner showing that they had more than $700,000 in self-directed IRA accounts, but the Zadows told Dehner that the IRA funds were invested in loans and, therefore, were not liquid, and thus not available for use as a down payment on any refinancing and renovation loans.

37.

Dehner, however, had misrepresented to APF that the Zadows IRAs were liquid and could be utilized as an equity contribution at closing, without the permission or consent of Ext-Indy or the Zadows.

38.

Dehner was well aware, though, that Ext-Indy and the Zadows were limited in their ability to obtain financing and that they could not contribute any money toward the refinancing or any renovations.

42

39.

Upon information and belief, APF agreed to refinance the Property and the renovations based largely on the representation from Dehner that the Zadows' IRAs were liquid and available to be utilized as an equity contribution at closing, in addition to representations from Dehner as to the renovation budget and the projected revenues of the Property once it was a Clarion Inn.

40.

The Zadows once again told Dehner that Ext-Indy could not close on the refinancing if it included an equity contribution.

41.

Dehner told the Zadows that he would get the equity contribution straightened out.

42.

Several days later, Ext-Indy received a revised closing statement indicating Ext-Indy would be required to make an equity contribution of approximately $115,000 at closing in order for APF to release the Equipment Loan funds which were to be used to pay for the GCP renovations.

43.

Once again, the Zadows contacted Dehner and told him that they could not make any equity contribution.

44.

Dehner told the Zadows to not worry and that he would be able to get APF to waive the equity contribution.

45.

Based on Dehner's representation that he would get APF to waive the equity contribution, Ext-Indy closed on the refinancing with APF around September 9, 2013.

46.

Accordingly, APF paid off the First Mortgage and it placed in escrow the funds which were to be used to pay for the GCP renovations.

47.

Furthermore, Dehner and HPCG received a $50,000 commission based solely on the fact that Dehner was able to secure the refinancing from APF, even though he did so by misrepresenting the Zadows' and Ext-Indy's financial condition.

**Ext-Indy Discovers that Dehner's Plans for Converting The Property to a Clarion Inn are Severely Flawed and that the Amount of Funds Available for the Renovations Is Woefully Inadequate**

48.

Shortly after closing the refinancing and based on Dehner's representation that he would get APF to waive the equity contribution, GCP began its work on the Property and Marshall commenced its service as hotel manager.

49.

Dehner, however, was unsuccessful in getting APF to waive the $115,000 equity contribution and began to insist that Ext-Indy borrow the $115,000 from any possible source, including loan sharks.

50.

Upon information and belief, Dehner never asked APF to waive the $115,000 equity contribution, as this could have jeopardized the entire refinancing package with APF and placed Dehner's $50,000 commission at risk.

51.

Ext-Indy and the Zadows soon began to realize that they were not going to be able draw upon the renovation funds since, as they had previously told Dehner, they could not make the $115,000 equity contribution.

52.

In addition, Ext-Indy soon began to realize that Dehner's entire plan to convert the Property to a Clarion Inn was based on misrepresentations he had made to many entities, including APF.

53.

Furthermore, in September 2013, shortly after closing, Ext-Indy met with GCP to discuss the renovation plans.

54.

GCP indicated to Ext-Indy that the renovations were actually going to cost substantially more than $2,000,000.00 and that Ext-Indy would personally have to cover the gap between the amount financed by APF and the actual cost of the renovations.

55.

Upon information and belief, Dehner knew the renovations would cost substantially more than $2,000,000.00 and told GCP that Ext-Indy would be able to cover the costs.

56.

Upon information and belief, GCP told APF that the renovation project was never going to be completed for $2,000,000.00 and that Dehner's representations to Ext-Indy that the renovation cost would be $2,000,000.00 were false.

57.

Moreover, once Marshall began managing the Property, Marshall quickly realized that Dehner's projections of the increased revenue that the Property would generate once it became a Clarion Inn were not realistic.

58.

Most importantly, Dehner entirely mislead APF as to the reality of the Ext-Indy conversion plan and the Zadows' financial position.

59.

Upon information and belief, Dehner represented to APF that the renovations by GCP would cost $2,000,000.00, even though he knew they would cost substantially more than $2,000,000.00.

60.

Also, Dehner presented revenue projections to APF that Marshall immediately recognized were unrealistic and unachievable.

61.

Upon information and belief, APF agreed to lend money to Ext-Indy based on the $2,000,000.00 renovation budget, Dehner's unrealistic revenue projections, and Dehner's misrepresentation that the Zadows' IRAs were liquid and available to be used as a cash contribution.

62.

Therefore, based on Dehner's misrepresentations to APF, Dehner was able to secure his $50,000.00 commission.

63.

As the agent for Ext-Indy and the Zadows, Dehner was never authorized by Ext-Indy to make the false representations that he made to APF.

64.

Furthermore, as the agent for Ext-Indy and the Zadows, Dehner was never authorized by Ext-Indy to make the false representations that he made to GCP or to any other entity.

**Ext-Indy Cancels the Plans to Convert to a Clarion Inn and
Decides to Sell the Property**

65.

Upon learning of Dehner's vast misrepresentations to secure the financing from APF in comparison to the reality of the Property's financial situation, Ext-Indy decided in early October 2013 to put the renovations on hold.

66.

Additionally, Ext-Indy instructed GCP to stop work around October 2013.

67.

Marshall departed as manager of the Property after it had managed the Property for only one (1) month.

68.

Ext-Indy also informed APF that it would not be drawing from the funds set aside for renovations.

69.

Moreover, in light of the fact that Ext-Indy began demolition and renovations in August and September, based on Dehner's misrepresentations, but then was unable to follow-through on the renovations, the revenue on the Property decreased to the point where Ext-Indy could not timely make its mortgage payment to APF at the beginning of October 2013.

70.

Thereafter, Ext-Indy indicated to APF that it was willing to sell the Property to Menards instead of attempting to rehabilitate the Property and continue to run it as a hotel.

71.

Accordingly, after making a late second mortgage payment at the beginning of November 2013, Ext-Indy was able to enter into a Forbearance Agreement with APF that would provide Ext-Indy with the opportunity to sell the Property without making further payments on the mortgage to APF.

72.

Ext-Indy, however, had accrued late fees and interest from the late payments that would ultimately be due to APF once Ext-Indy sold the Property.

73.

Furthermore, upon sale of the Property, Ext-Indy would owe a substantial prepayment premium to APF in light of Ext-Indy's sale of the Property and repayment of the APF financing within the first five (5) years of the payment period.

74.

Eventually, Ext-Indy was able to close on the sale of the Property to a third-party in December 2014, but not until Ext-Indy incurred substantial additional penalties to APF under the loan, including, for example, interest of around $173,000.00, prepayment premiums of $105,000.00, and attorneys' fees of $85,000.00, for a total of $363,000.00.

75.

Ext-Indy would never have owed $363,000.00 to APF if Dehner and HPCG had not secured financing from APF based solely on Dehner's proven misrepresentations.

76.

In addition, GCP is attempting to collect $7,500.00 for work it purportedly performed in October 2013.

77.

Ext-Indy would never have owed an additional $7,500.00 (if Ext-Indy even owes this money) to GCP if Dehner and HPCG had not made numerous misrepresentations to GCP, APF, Ext-Indy, and the Zadows.

78.

Dehner and HPCG are responsible for all costs incurred and damages sustained by Ext-Indy as a result of Dehner's ill-conceived scheme to refinance the Property by converting it to a Clarion Inn.

79.

All conditions necessary to the bringing of these causes of action have been satisfied or, by conduct of the parties, waived.

## CROSS-CLAIM COUNT ONE - BREACH OF FIDUCIARY DUTY

*(Against Dehner and HPCG)*

80.

Ext-Indy and the Zadows hereby re-allege all matters set forth in the foregoing Cross-claim Paragraphs and incorporate same as if stated verbatim herein.

81.

As the agent and broker for Ext-Indy and the Zadows concerning the loan transactions and the strategy for the Property, Dehner and HPCG owed fiduciary obligations to Ext-Indy and the Zadows.

82.

By reason of the fiduciary relationships between Dehner and HPCG –as the agent and broker for Ext-Indy and the Zadows,, Dehner and HPCG owed Ext-Indy and the Zadows the highest duty of candor, good faith, full disclosure, fair dealing, loyalty, and due care.

83.

Dehner and HPCG had actual and constructive knowledge of certain actions or conduct detrimental to Ext-Indy and the Zadows, thus constituting breaches of their fiduciary duties, including:

(a)     Engaging in self-dealing by putting their interests in receipt of the initial retainer and commission above those of the principals, Ext-Indy and the Zadows;

(b)     Providing false and misleading information to APF, without Ext-Indy's and the Zadows' knowledge, approval, or consent, concerning Ext-Indy's ability to make an equity contribution as part of the loans;

(c)     Failing to comply with Ext-Indy's and the Zadows' instructions that it could not put any equity into the refinancing;

(d)     Inducing Ext-Indy to sign the Loan Documents with the promise that Dehner would later get APF to agree to eliminate the equity contribution;

(e)     Inducing Ext-Indy to enter into other contracts and, thus, incur, other obligations and liabilities, with the knowledge that Ext-Indy could not satisfy the underlying loan terms being offered by APF; and

(f)     Advising Ext-Indy to take action to breach its obligations to APF under the Loan Documents by seeking alternative funding for the equity contribution through unapproved sources such as loan sharks.

84.

Dehner and HPCG breached their fiduciary duties of candor, good faith, full disclosure, fair dealing, loyalty, and due care owed to Ext-Indy and the Zadows.

85.

The misconduct of Dehner and HPCG giving rise to Ext-Indy's and the Zadows' claims for breach of fiduciary duties has been willful and reckless.

86.

As a direct and proximate result of the breaches of fiduciary duties by Dehner and HPCG, Ext-Indy and the Zadows have sustained significant monetary damage and irreparable harm, requiring appropriate relief.

## CROSS-CLAIM COUNT TWO – FRAUD

*(Against Dehner and HPCG)*

87.

Ext-Indy and the Zadows hereby re-allege all matters set forth in the foregoing Cross-claim Paragraphs and incorporates same as if stated verbatim herein.

88.

Dehner and HPCG made numerous misrepresentations to Ext-Indy and the Zadows, as set forth above, concerning the refinancing, including, without limitation, the removal of the equity contribution, the depressed construction budget, and the inflated projected revenues (the "Misrepresentations").

89.

Ext-Indy and the Zadows reasonably relied upon these Misrepresentations when they agreed to enter into a construction contract with GCP, a management contract with Marshall, the Clarion Inn Franchise Agreement, and most importantly, the Loan Documents with APF.

90.

The Misrepresentations were material to the construction contract with GCP, a management contract with Marshall, the Clarion Inn Franchise Agreement, and most importantly, the Loan Documents with APF.

91.

By making the Misrepresentations, Dehner and HPCG intended to induce Ext-Indy and the Zadows into executing the construction contract with GCP, a management contract with Marshall, the Clarion Inn Franchise Agreement, and most importantly, the Loan Documents with APF.

92.

These actions by Dehner and HPCG constitute common law fraud.

93.

As a direct and proximate result of the fraud by Dehner and HPCG, Ext-Indy and the Zadows have sustained significant damage in an amount to be proven at trial.

## CROSS-CLAIM COUNT THREE – NEGLIGENT MISREPRESENTATION

*(Against Dehner and HPCG)*

94.

Ext-Indy and the Zadows hereby re-allege all matters set forth in the foregoing Cross-claim Paragraphs and incorporates same as if stated verbatim herein.

95.

Dehner and HPCG made numerous misrepresentations to Ext-Indy and the Zadows, as set forth above, concerning the refinancing, including, without limitation, the removal of the equity contribution, the depressed construction budget, and the inflated projected revenues (the "Misrepresentations").

96.

Ext-Indy and the Zadows reasonably relied upon these Misrepresentations when they agreed to enter into a construction contract with GCP, a management contract with Marshall, the Clarion Inn Franchise Agreement, and most importantly, the Loan Documents with APF.

97.

The Misrepresentations were material to the construction contract with GCP, a management contract with Marshall, the Clarion Inn Franchise Agreement, and most importantly, the Loan Documents with APF.

98.

By negligently making the Misrepresentations, Dehner and HPCG induced Ext-Indy and the Zadows into executing the construction contract with GCP, a management contract with Marshall, the Clarion Inn Franchise Agreement, and most importantly, the Loan Documents with APF.

99.

These actions by Dehner and HPCG constitute negligent misrepresentation.

100.

As a direct and proximate result of the fraud by Dehner and HPCG, Ext-Indy and the Zadows have sustained significant damage in an amount to be proven at trial.

## CROSS-CLAIM COUNT FOUR - BREACH OF CONTRACT

*(Against HPCG)*

### 101.

Ext-Indy hereby re-alleges all matters set forth in the foregoing Cross-claim Paragraphs and incorporates same as if stated verbatim herein.

### 102.

HPCG breached the Engagement Agreement where it failed to negotiate the refinancing package with APF subject to the express conditions imposed by Ext-Indy.

### 103.

HPCG breached the Engagement Agreement where it failed properly to assist Ext-Indy with facilitating the due diligence and closing process.

### 104.

HPCG breached the Engagement Agreement where provided services it was not authorized to provide on behalf of Ext-Indy.

### 105.

HPCG's misconduct giving rise to Ext-Indy's claims, including the misconduct of Dehner, for breaching the Engagement Agreement, has been willful and reckless.

106.

As a direct and proximate result of the breaches of the Engagement Agreement by HPCG, Ext-Indy has sustained significant damage in an amount to be proven at trial.

## CROSS-CLAIM COUNT FIVE
## ATTORNEY FEES AND LITIGATION EXPENSES

107.

Ext-Indy hereby re-alleges all matters set forth in the foregoing Cross-claim Paragraphs and incorporates same as if stated verbatim herein.

108.

In its representation of Ext-Indy, Dehner and HPCG have acted in bad faith, been stubbornly litigious, and have caused Ext-Indy unnecessary trouble and expense.

109.

Pursuant to O.C.G.A. § 13-6-11, Ext-Indy is entitled to attorney fees and expenses of litigation in connection with bringing these Cross-claims.

## CROSS-CLAIM COUNT SIX - PUNITIVE DAMAGES

110.

Ext-Indy hereby re-alleges all matters set forth in the foregoing Cross-claim Paragraphs and incorporates same as if stated verbatim herein.

111.

The unlawful actions of Dehner and HPCG towards Ext-Indy further

demonstrates willful misconduct, malice, wantonness, oppression, and that entire

want of care raising the presumption of conscious indifference to the

consequences, thus entitling Ext-Indy to punitive damages under O.C.G.A. § 51-

12-5.1.

## CROSS-CLAIM COUNT SEVEN
## INDEMNIFICATION

112.

Ext-Indy hereby re-alleges all matters set forth in the foregoing Cross-claim

Paragraphs and incorporates same as if stated verbatim herein.

113.

HPCG acted as the agent for Ext-Indy in connection with the Loan

Transactions.

114.

As Ext-Indy's agent, HPCG owed Ext-Indy certain duties, including the duty

to make good for any loss or damage suffered by Plaintiff for which Ext-Indy is or

may be liable as a result of the acts, errors or omissions of HPCG or its principals.

115.

The misconduct giving rise to Plaintiff's claims for fraud and negligent misrepresentation result solely from the acts, errors, and omissions of HPCG and Dehner acting in the capacity as Ext-Indy's agent.

116.

Ext-Indy denies that it authorized, approved, or consented to Dehner and/or HPCG making any misrepresentations to Plaintiff; however, to the extent the negligence or willful misconduct of HPCG and/or Dehner is imputed to Ext-Indy, then Ext-Indy is entitled to indemnification from HPCG.

117.

As such, if Ext-Indy is compelled to pay damages to Plaintiff as the result of its fraud or negligent misrepresentation claims set out in the Complaint then HPCG, as Ext-Indy's agent, must indemnify Ext-Indy from all such damages awarded, as well as all attorney fees and expenses of litigation incurred in connection with defending such claims.

## PRAYER FOR RELIEF ON CROSS-CLAIM

**WHEREFORE**, Ext-Indy demands a jury trial on its Cross-claim and, with respect to said Cross-claim, Ext-Indy prays for the following relief:

(a)    a judgment be entered in favor of Ext-Indy and against Cross-claim defendants Dehner and HPCG on all counts of the Cross-claim, in an amount to be proven at trial;

(b)    Ext-Indy be indemnified by HPCG for any judgment obtained by Plaintiff against Ext-Indy on Counts Two or Three of the Complaint;

(c)    Ext-Indy be awarded its cost and attorney fees in connection with prosecuting this Cross-claim;

(d)    Ext-Indy be awarded punitive damages against Cross-claim defendants Dehner and HPCG for their willful, wanton, and wrongful conduct based on the enlightened conscious of the jury;

(e)    A trial by jury be had on all counts so triable; and

(f)    Ext-Indy receive such other and further relief on its Cross-claim as this Court deems just and proper under the circumstances.

## COUNTERCLAIM FOR DAMAGES

Subject to and without waiving its affirmative defenses of lack of personal jurisdiction and improper venue, Plaintiffs-in-Counterclaim Ext-Indy Suites, LLC, an Indiana limited liability company ("Ext-Indy"), Ryszard J. Zadow, and Claire J. Zadow (collectively the "Counterclaimants"), file this, their Counterclaim for Damages ("Counterclaim") pursuant to Fed. R. Civ. P. 13, stating as follows:

## PROCEDURAL POSTURE

1.

As alleged in the Complaint, Defendant-in-Counterclaim Access Point Financial, Inc. ("APF") is authorized to transact business in Georgia, is transacting business in Georgia, and is subject to the Court's jurisdiction by virtue of its filing the Complaint.

## FACTS COMMON TO ALL COUNTS

2.

On or about December 11, 2014, Ext-Indy closed on the sale of the subject Property to a third-party, Menard, Inc. (the "Menard Sale").

3.

As part of the Menard Sale, Ext-Indy obtained from APF the amounts that APF required for payment of the release of its Mortgage on the property.

4.

As part of the Menard Sale, APF furnished Ext-Indy with a required payment, which included: principal balance; interest for a specified period on both the Mortgage Loan and the Equipment Loan; default interest; a prepayment fee for the Mortgage Loan; a prepayment fee for the Equipment Loan; a UCC Fee; Late Charge; NSF Fees on the Equipment Loan; and Legal Fees and Costs of APF.

5.

Portions of the interest charges for the Mortgage Loan, the Equipment Loan, and so-called Default Interest were not properly calculated by APF and were, therefore overstated.

6.

As to the charge for legal fees, Ext-Indy repeatedly requested that APF provide detailed records supporting its claim for $85,000 in legal fees.

7.

Despite these repeated requests, APF failed and refused to provide detailed backup of the legal fees, and has not furnished Ext-Indy with any documentation supporting its claim for legal fees.

8.

After the December, 2014 closing on the Menard Sale, and after Ext-Indy paid of the loans, including all interest, penalties, fees, and charges claimed by APF, Ext-Indy requested that APF dismiss the instant lawsuit.

9.

APF, without justification, and despite being paid all amounts it claimed it was owed, including improperly calculated interest charges and unsubstantiated

legal fees, insisted that it would not dismiss the lawsuit unless Ext-Indy and the

Zadows provided a full release.

10.

When it made this demand, APF knew or reasonably should have known

that Ext-Indy and the Guarantors had previously waived certain claims and

defenses against APF, yet APF still insisted on this additional release, which had

no basis under any of the agreements signed by either Ext-Indy or the Guarantors.

11.

All conditions necessary to the bringing of this Counterclaim have been

satisfied or, by conduct of the parties, waived.

**COUNTERCLAIM COUNT ONE**
**BREACH OF THE EQUIPMENT LOAN**

12.

Counterclaimants hereby re-allege all matters set forth in the foregoing

Paragraphs of this Counterclaim, and incorporate the same as if stated verbatim

herein.

13.

As alleged herein, APF breached the Equipment Loan by insisting that Ext-

Indy pay an equity contribution before it was due.

14.

As alleged herein, APF claimed a right to additional monies from Ext-Indy under the Equipment Loan based on APF's position that Ext-Indy did not pay the equity contribution, a right that APF did not have under the Equipment Loan.

15.

As alleged herein, APF further claimed a right to additional monies under other loan documents executed between APF and Ext-Indy based on APF's position the Ext-Indy did not pay the equity contribution, a right that APF did not have under the Equipment Loan.

16.

As a direct and proximate result of these breaches of the Equipment Loan, Counterclaimants have been damaged in an amount to be proven at trial.

## COUNTERCLAIM COUNT TWO
## BREACH OF THE MORTGAGE LOAN

17.

Counterclaimants hereby re-allege all matters set forth in the foregoing Paragraphs of this Counterclaim, and incorporate the same as if stated verbatim herein.

18.

As alleged herein, APF breached the Mortgage Loan by insisting that Ext-Indy pay an equity contribution before it was due.

19.

As alleged herein, APF claimed a right to additional monies from Ext-Indy under the Mortgage Loan based on APF's position that Ext-Indy did not pay the equity contribution, a right that APF did not have under the Mortgage Loan.

20.

As alleged herein, APF further claimed a right to additional monies under other loan documents executed between APF and Ext-Indy based on APF's position the Ext-Indy did not pay the equity contribution, a right that APF did not have under the Mortgage Loan.

21.

As a direct and proximate result of these breaches of the Mortgage Loan, Counterclaimants have been damaged in an amount to be proven at trial.

## COUNTERCLAIM COUNT THREE
## BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

### 22.

Counterclaimants hereby re-allege all matters set forth in the foregoing Paragraphs of this Counterclaim, and incorporate the same as if stated verbatim herein.

### 23.

As a party to the Equipment Loan and the Mortgage Loan, APF owed and owes Ext-Indy a duty to deal with Ext-Indy fairly and in good faith in performing its contractual duties.

### 24.

APF breached its duty of good faith and fair dealing where it insisted on APF complying with obligations under the Equipment Loan and the Mortgage Loan that did not exist.

### 25.

APF further breached its duty of good faith and fair dealing where it refused to permit Ext-Indy to close on the sale of the Property to a third-party without first paying APF certain alleged interest, penalties, and fees, which were based on an improper calculation of such interest, penalties and fees.

26.

APF further breached its duty of good faith and fair dealing where it refused

to dismiss the instant lawsuit after Ext-Indy paid APF all outstanding principal,

interest, penalties and fees owed under the Equipment Loan and the Mortgage

Loan, without Ext-Indy first agreeing to release APF from all claims.

27.

As a direct and proximate result of these breaches, Counterclaimants have

been damaged in an amount to be proven at trial.

## COUNTERCLAIM COUNT FOUR
## UNJUST ENRICHMENT

28.

Counterclaimants hereby re-allege all matters set forth in the foregoing

Paragraphs of this Counterclaim, and incorporate the same as if stated verbatim

herein.

29.

By its wrongful acts and omissions, APF has been unjustly enriched at the

expense and to the detriment of Counterclaimants.

30.

Counterclaimants seek restitution from APF and seeks an order of this Court

disgorging all excessive interest and legal fees charged by APF, which is

70

compensation obtained by APF and its representatives from its wrongful conduct towards Counterclaimants.

31.

Counterclaimants have sustained both monetary and irreparable harm as a result of the unjust enrichment of APF.

**COUNTERCLAIM COUNT FIVE**
**ATTORNEY FEES AND EXPENSES OF LITIGATION**

32.

Counterclaimants hereby re-allege all matters set forth in the foregoing Paragraphs of this Counterclaim, and incorporate the same as if stated verbatim herein.

33.

In its efforts to enforce extra-contractual obligations on Counterclaimants and/or to modify or alter the terms of the Loan Documents without Counterclaimants' permission or consent, APF has acted in bad faith, been stubbornly litigious, and has caused Counterclaimants unnecessary trouble and expense.

34.

In its repeated threatening to take action against Counterclaimants, purportedly under the Loan Documents and/or the Mortgage Note and Promissory

Note, and in its commencing action against Counterclaimants to foreclose on the subject Property, all while lacking substantial justification to do so, APF has acted in bad faith, been stubbornly litigious, and has caused Counterclaimants unnecessary trouble and expense.

35.

Pursuant to O.C.G.A. § 13-6-11, Counterclaimants are entitled to recover their fees and expenses caused by APF's misconduct giving rise to Counterclaimants' Counterclaim, including their reasonable attorney fees incurred in prosecuting same.

**PRAYER FOR RELIEF ON COUNTERCLAIM**

WHEREFORE, Counterclaimants DEMAND A JURY TRIAL on their Counterclaim and, with respect to said Counterclaim, Counterclaimants pray that:

(a)   a judgment be entered in favor of Counterclaimants and against APF on all counts of the Counterclaim, in an amount to be proven at trial;

(b)   all costs of this action be assessed against Defendant-in-Counterclaim Access Point Financial, Inc.; and

(c)   Counterclaimants be awarded such other and further relief deemed just and proper under the circumstances.

72

Respectfully submitted this 2nd day of January, 2015.

**THRASHER LISS & SMITH LLC**

G. Scott Walters
Georgia Bar No. 735610
swalters@tlslaw.com

Five Concourse Parkway
Suite 2600
Atlanta, Georgia 30328
Telephone: (404) 760-6000
Facsimile: (404) 760-0225

*Attorney for Ext-Indy Suites, LLC, Ryszard J. Zadow, and Claire J. Zadow*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), G. Scott Walters hereby certifies that the

foregoing **Defendant Ext-Indy Suites, LLC's Answer, Defenses, Cross-Claims,**

**and Counterclaims** has been prepared in compliance with Local Rule 5.1(B) in a

14-point Times New Roman type face.

G. Scott Walters

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the within and foregoing **Defendant Ext-Indy Suites, LLC's Answer, Defenses, Cross-Claims, and Counterclaims** upon all other parties to this action, by depositing a true and correct copy of the same in the United States Mail, in a properly addressed envelope, with adequate postage attached thereto in order to ensure delivery, and addressed as follows:

John F. Isbell, Esq.
Alexandra J. Chanin, Esq.
Thompson Hine LLP
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, Georgia 30326
*Attorneys for Plaintiff*

Eric Ludwig, Esq.
Zachary S. Lewis, Esq.
Hawkins Parnell Thackston & Young, LLP
4000 SunTrust Plaza
303 Peachtree Street NE
Atlanta, Georgia 30308-3243
*Attorneys for Defendants Jerry Dehner and Hyde Park CG, LLC*

This 2nd day of January, 2015.

_____

G. Scott Walters
Georgia Bar No. 735610
swalters@tlslaw.com

**THRASHER LISS & SMITH LLC**
Five Concourse Parkway
Suite 2600
Atlanta, Georgia  30328
T: (404) 760-6000
F: (404) 760-0225

*Attorney for Ext-Indy Suites, LLC,*
*Ryszard J. Zadow, and Claire J.*
*Zadow*

76