# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ACCESS POINT FINANCIAL, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : CIVIL ACTION NO.<br>: 1:15-CV-0002-RWS |
| | : |
| EXT-INDY SUITES, LLC, RYSZARD J. ZADOW, CLAIRE J. ZADOW, JERRY DEHNER, and HYDE PARK CG, LLC, | : |
| | : |
| Defendants. | : |

## **ORDER**

This case comes before the Court on Defendants' Jerry Dehner and Hyde Park CG, LLC's Motion for Summary Judgment of the Cross-Claims of Defendants Ext-Indy Suites, LLC and Ryszard and Claire Zadow ("Motion for Summary Judgment") [153]. After reviewing the record, the Court enters the following Order.

## **Background**

This action arises out of an arrangement between Plaintiff Access Point Financial, Inc. ("APF") and Defendant Ext-Indy Suites, LLC ("Ext-Indy"). Ext-Indy and APF entered into several agreements in an effort to secure funds

to transform a hotel, owned by Ext-Indy, into a more profitable enterprise. These agreements were facilitated by Ext-Indy's broker, Defendant Hyde Park CG, LLC ("HPCG"). On December 29, 2017, APF's claims against HPCG and Defendant Jerry Dehner (collectively the "HPCG Defendants") were dismissed with prejudice by stipulation. (Stipulation of Dismissal, Dkt. [177].) On March 8, 2018, the claims between APF, Ext-Indy, Ryszard J. Zadow, and Claire J. Zadow (collectively the "Ext-Indy Defendants") were dismissed with prejudice by stipulation. (Order, Dkt. [183].) The cross-claims asserted by the Ext-Indy Defendants against the HPCG Defendants are therefore all that remain pending.

Ext-Indy's initial financing involved a loan with Private Capital Group ("PCG"). Ext-Indy entered into an agreement with HPCG in order to secure new financing prior to the maturity date on the loan with PCG. Ext-Indy and HPCG signed a written Advisory Engagement Agreement on July 30, 2013, under which HPCG would act as a broker for Ext-Indy. (Statement of Material Facts in Supp. of HPCG Defs.' Mot. for Summ. J. ("HPCG Defs.' SOMF"), Dkt. [153-2] ¶ 1.) HPCG facilitated the loan between APF and Ext-Indy.

In their cross-claims, the Ext-Indy Defendants bring claims for breach of

fiduciary duty, fraud, negligent misrepresentation, breach of contract, and other subsidiary claims. These claims, in large part, stem from the terms of the loan from APF. The Closing Statement, signed by Claire Zadow for Ext-Indy, stated that Ext-Indy would be required to make an equity contribution of $115,610 prior to the first draw. (Id. ¶ 5.) The Ext-Indy Defendants allege that the inclusion of this term amounts to a breach of contract and a breach of fiduciary duty by the HPCG Defendants, as well as fraud and negligent misrepresentation. They further allege that Henry Dehner's representations that he would have the equity requirement removed after the Closing Statement was signed amounts to fraud and negligent misrepresentation. Finally, they allege that Henry Dehner shared confidential financial information with PCG, thus breaching the fiduciary duty owed to the Ext-Indy Defendants.

## Analysis

I. **Legal Standard**

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The moving party bears 'the initial responsibility of informing the . . . court of the basis for

3

its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249–50.

Additionally, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

4

burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). No genuine issue of material fact exists "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Thus, if a party who has the burden of proof fails to make a showing sufficient to establish the existence of any essential element to a claim, summary judgment may be properly granted against him.

Finally, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences that are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met

5

its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

**II. Analysis**

    A. <u>Breach of Contract</u>

As an initial matter, the parties dispute whether Georgia or Ohio law governs this claim. "In a case founded on diversity jurisdiction, the district court must apply the forum state's choice of law rules." <u>Federated Rural Elec. Ins. Exch. v. R.D. Moody & Assocs., Inc.</u>, 468 F.3d 1322, 1325 (11th Cir. 2006). Under Georgia law, "parties by contract may stipulate that the laws of another jurisdiction will govern the transaction." <u>Manderson & Assocs., Inc. v. Gore</u>, 389 S.E.2d 251, 254 (Ga. Ct. App. 1989). "In the absence of contrary public policy, [Georgia] courts normally will enforce a contractual choice-of-law provision, as the parties by contract may stipulate that the laws of another jurisdiction will govern the transaction." <u>Scales v. Textron Fin. Corp.</u>, 622 S.E.2d 903, 904 (Ga. Ct. App. 2005) (quoting <u>Nationwide Logistics v. Condor Transp.</u>, 606 S.E.2d 319, 322 (Ga. Ct. App. 2004)). However, if "the chosen state has no substantial relationship to the parties or the transaction," the chosen law will not be applied. <u>Ryder Truck Lines, Inc. v. Goren Equip. Co.</u>,

6

576 F. Supp. 1348, 1354 (N.D. Ga. 1983).

Here, the Advisory Engagement Agreement contains a choice-of-law provision stating that "[t]his Engagement Agreement shall be construed and enforced pursuant to the Laws of the State of Ohio." (Advisory Engagement Agreement, Ex. B, Dkt. [153-4], at 7.) While the HPCG Defendants argue in favor of applying Georgia law to this cause of action, they do not point to any policy considerations that would prohibit the application of Ohio law. In addition, Ohio has a substantial relationship to the parties since HPCG is based in Ohio. The Court therefore finds that Ohio law governs any disputes arising out of the Advisory Engagement Agreement.

Under Ohio law, for "a breach of contract claim, a party must establish four elements: (1) a binding contract or agreement was formed; (2) the nonbreaching party performed its contractual obligations; (3) the other party failed to fulfill its contractual obligations without legal excuse; and (4) the nonbreaching party suffered damages as a result of the breach." Carbone v. Nueva Constr. Grp., L.L.C., 83 N.E.3d 375, 380 (Ohio Ct. App. 2017) (internal quotations and alterations omitted). The HPCG defendants argue that they fulfilled their obligations under the Advisory Engagement Agreement, so the

7

Ext-Inty Defendants cannot show that the contract was in fact breached. The Ext-Inty Defendants respond that the breach occurred when the HPCG defendants failed to obtain loan terms that did not require an equity contribution at closing. They concede that "[t]here is no express term in the Engagement Agreement" concerning the terms of the loan to be negotiated, instead arguing that the parties reached an understanding outside the written terms of the contract. (Ext-Indy Defs.' Resp. in Opp'n to HPCG Defs.' Mot. for Summ. J. ("Ext-Indy Defs.' Resp."), Dkt. [167], at 20.)

"The parol-evidence rule is a principle of common law providing that a writing intended by the parties to be a final embodiment of their agreement cannot be modified by evidence of earlier or contemporaneous agreements that might add to, vary, or contradict the writing." Bellman v. Am. Int'l Grp., 865 N.E.2d 853, 856–57 (Ohio 2007) (internal quotations omitted). "The rule operates to prevent a party from introducing extrinsic evidence of negotiations that occurred before or while the agreement was being reduced to its final written form, and it assumes that the formal writing reflects the parties' minds at a point of maximum resolution and, hence, that duties and restrictions that do not appear in the written document were not intended by the parties to survive."

Id. at 857 (internal quotations, alterations, and citations omitted). However, "the parol evidence rule applies only to evidence of *prior or contemporaneous* written or oral understandings or negotiations." Hawley v. Dresser Indus., Inc., 738 F. Supp. 243, 248 (S.D. Ohio 1990). "Subsequent written and oral agreements can modify an integrated written contract." Id. at 248–49.

The Ext-Indy Defendants point to several pieces of evidence to show that the parties reached an agreement that the HPCG Defendants were required to negotiate a loan without a cash contribution requirement. Claire Zadow testified at her deposition that the Ext-Indy Defendants "directed [Dehner] to give us a loan that had no cash at closing . . . ." (C. Zadow Dep., Ex. 5, Dkt. [167-5], at 10.) Ryszard Zadow testified that the Ext-Indy Defendnats did not indicate that they would be able to refinance if an equity contribution was required. (R. Zadow Dep., Ex. 6, Dkt. [167-6], at 3.) There is also evidence that the HPCG Defendants informed APF that the Ext-Indy Defendants desired a no cash closing. (Ex. 1, Dkt. [165-1].)

It is unclear whether this evidence is offered in support of a prior or contemporaneous understanding between the parties or a subsequent agreement intended to modify the written Advisory Engagement Agreement. Assuming

9

arguendo that it is of a subsequent agreement and therefore not barred by the parol evidence rule, this evidence is insufficient to show an agreement between the parties. While there is evidence that the Ext-Indy Defendant's desire for a closing without a cash contribution was known to the HPCG Defendants, there has been no evidence that the parties reached an agreement guaranteeing that the HPCG Defendants would secure such a term in negotiations. The Ext-Indy Defendants have therefore failed to meet their burden, and the HPCG Defendant's motion for summary judgment is **GRANTED** as to Cross-Claim Count Four.

### B. Fraud and Negligent Misrepresentation

The parties agree that Counts Two and Three of the Cross-Claim [23] for fraud and negligent misrepresentation are governed by Georgia law. To prove fraud, the Ext-Indy Defendants must show: "(1) false representation by [the HPCG Defendants]; (2) scienter; (3) intent to induce the [Ext-Indy Defendants] to act or refrain from acting; (4) justifiable reliance by the [Ext-Indy Defendants]; and (5) damage to the [Ext-Indy Defendants]." Next Century Commc'ns Corp. v. Ellis, 318 F.3d 1023, 1027 (11th Cir. 2003) (quoting Ades v. Werther, 567 S.E.2d 340, 343 (Ga. Ct. App. 2002)). A claim of negligent

10

misrepresentation requires the Ext-Indy Defendants prove: "(1) the [HPCG Defendant's] negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." Id. at 1030 (citing Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc., 479 S.E.2d 727, 729 (Ga. 1997)). These are similar causes of action, and "the only real distinction . . . is the absence of the element of knowledge of the falsity of the information disclosed" in a claim of negligent misrepresentation. Holmes v. Grubman, 691 S.E.2d 196, 200 (Ga. 2010).

These claims are based on two separate alleged misrepresentations: the HPCG Defendants' representations to APF that the Ext-Indy Defendants would make an equity infusion into the transaction and the HPCG Defendants' representations to the Ext-Indy Defendants that the equity contribution requirement would be removed after the closing documents were signed. As to the first representation, the Ext-Indy Defendants offer no evidence that such a representation ever actually occurred. The evidence instead necessitates the conclusion that APF was told that the Ext-Indy Defendants were unable to make an equity contribution. The Ext-Indy Defendants state that "it is clear

11

that APF was informed that the Ext-Indy Parties wanted a no-cash at closing loan." (Ext-Indy Defs.' Resp., Dkt. [167], at 21; see also Ex. 1, Dkt. [165-1], at 3 (stating, in an internal APF email, that the "sponsors are not able to put additional equity into the property at this time").) All communications with APF were with the HPCG Defendants. (Ext-Indy Defs.' SOMF, Dkt. [168] ¶¶ 30, 45.) Since the Ext-Indy Defendants have not pointed to any evidence that the HPCG Defendants made the alleged representation to APF, summary judgment is **GRANTED** as to this portion of Cross-Claims Counts Two and Three.

As to the second representation, it "is axiomatic that a false representation made by a defendant, to be actionable, must relate to an existing fact or a past event. Fraud cannot consist of mere broken promises, unfilled predictions or erroneous conjecture as to future events." Next Century Commc'ns, 318 F.3d at 1027 (quoting Fuller v. Perry, 476 S.E.2d 793, 796 (Ga. Ct. App. 1996)). The Court finds that any statements made by the HPCG Defendants regarding their ability to remove the equity contribution requirement after the closing documents were signed amounts to "promises to perform some act in the future." Equifax, Inc. v. 1600 Peachtree, LLC., 601

12

S.E.2d 519, 525 (Ga. Ct. App. 2004). A "mere failure to perform promises made" does not amount to actionable fraud. Id. at 525–26; see also Fuller, 476 S.E.2d at 796 (finding that statements regarding a proposed transaction still under negotiation were not actionable in a claim for fraud).

"Although fraud may not generally be predicated on statements which are promissory in nature as to future acts or events, it can be predicated on such representations where there is a present intention not to perform or a present knowledge that the future event will not occur." Seligman v. Savannah Wholesale Co., 363 S.E.2d 785, 787 (Ga. Ct. App. 1987) (quoting Seminole Peanut Co. v. Goodson, 335 S.E.2d 157, 160 (Ga. Ct. App. 1985)). Although the Ext-Indy Defendants argue that the HPCG Defendants knew they would not be able to reduce the equity requirement to zero when the alleged representations were made, they provide no evidence in support. The failure to "predict accurately or guaranty the future financial condition or performance of a third party" cannot be the basis of a claim for fraud or negligent misrepresentation. Fuller, 476 S.E.2d at 796. This alleged representation is therefore not actionable, and summary judgment is **GRANTED** as to this portion of Cross-Claim Counts Two and Three.

13

C. Breach of Fiduciary Duty

The parties agree that Count One of the Cross-Claim [23] for breach of fiduciary duty is governed by Georgia law. "It is well settled that a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." Ansley Marine Const., Inc. v. Swanberg, 660 S.E.2d 6, 9 (Ga. Ct. App. 2008) (quoting Jonas v. Jonas, 633 S.E.2d 544, 549 (Ga. Ct. App. 2006)).

The Ext-Indy Defendants point to two instances in which the HPCG Defendants breached their fiduciary duty. First, they allege that the HPCG Defendants failed to comply with the directive to secure a loan that did not require an equity contribution at closing. However, any "duty of diligence and good faith cannot be held to include an obligation to predict accurately or guaranty the future . . . performance of a third party." Fuller, 476 S.E.2d at 796 (quoting Garcia v. Unique Realty & Prop. Mgmt. Co., 424 S.E.2d 14, 16 (Ga. Ct. App. 1992)). As discussed above, the HPCG Defendants informed APF that the Ext-Indy Defendants would be unable to make an equity contribution. The HPCG Defendants' inability to force APF, a third party, to comply with the Ext-Indy Defendants' request cannot be held to be a breach of fiduciary duty.

14

Second, the Ext-Indy Defendants allege that the HPCG Defendants breached their fiduciary duty by sharing with Private Capital Group, without authorization, confidential financial information regarding the finalization of the loan with APF. Assuming, without deciding, that a fiduciary relationship existed between the parties, the Court finds that a question of fact exists as to whether the HPCG Defendants had the authority to share this information and therefore whether this amounts to a breach of a fiduciary relationship.

The HPCG Defendants argue that the evidence relied upon for this claim, an email dated September 4, 2013, between Justin Griffin, of Private Capital Group, and Shane Toland, the Ext-Indy Defendants' lawyer, is inadmissible. (Ex. 11, Dkt. [165-11].) "Inadmissible hearsay generally 'cannot be considered on a motion for summary judgment.'" McCaskill v. Ray, 279 F. App'x 913, 914 (11th Cir. 2008) (quoting Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999)). Otherwise admissible evidence, however, may be "submitted in *inadmissible form* at the summary judgment stage . . . ." McMillian v. Johnson, 88 F.3d 1573, 1584 (11th Cir. 1996). This evidence is therefore appropriate for consideration at this stage of the litigation.

Summary Judgment is therefore **DENIED** as to Cross-Claim Count One

15

insofar as it relates to the relaying of information to Private Capital Group and **GRANTED** summary judgment as to the remainder of Cross-Claim Count One.

### D. Other Claims

The Ext-Indy Defendants bring claims for attorney's fees and litigation expenses under O.C.G.A. § 13-6-11 (Cross-Claim Count Five), punitive damages under O.C.G.A. § 51-12-5.1 (Cross-Claim Count Six), and indemnification (Cross-Claim Count Seven). Since summary judgment has been denied as to a portion of the Ext-Indy Defendants' claims, these claims remain. Summary judgment is therefore **DENIED** as to Cross-Claim Counts Five, Six, and Seven.

## Conclusion

In accordance with the foregoing, Defendants Jerry Dehner and Hyde Park CG, LLC's Motion for Summary Judgment of the Cross-Claims of Ext-Indy Suites, LLC./Ryszard and Claire Zadow [153] is **GRANTED** as to Cross-Claims Counts Two, Three, and Four, **GRANTED in part and DENIED in part** as to Cross-Claim Count One, and **DENIED** as to Cross-Claims Counts Five, Six, and Seven. The parties are **ORDERED** to submit a proposed

consolidated pretrial order within thirty days.

**SO ORDERED**, this 13th day of June, 2018.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)